**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>$44,980.00 in Untied States Currency,<br><br>Defendant *In Rem*. | No. CV-23-01453-PHX-JAT<br><br>**ORDER** |

Pending before the Court is the United States of America's ("Plaintiff") Motion for Default Judgment. (Doc. 8). For the following reasons, the Court grants Plaintiff's motion.

**I.   BACKGROUND**

On July 21, 2023, Plaintiff initiated this *in rem* forfeiture proceeding against the defendant property, $44,980.00 of United States currency. (Doc. 1 at 1). Plaintiff alleges that the defendant property was "used or intended to be used in exchange for controlled substances" or to facilitate a violation of the Controlled Substances Act. (Doc. 8 at 1). Plaintiff also alleges that the defendant property constitutes proceeds traceable to unlawful activity under 18 U.S.C. § 1952. (*Id.* at 2). Plaintiff argues that, based on these violations, the defendant property is subject to forfeiture under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) and (C). (*Id.* at 2, 4).

The facts recited below reflect Plaintiff's allegations in the complaint. The defendant property was found inside of a popcorn tin shipped via United States Postal Service ("USPS") Priority Express Mail. (Doc. 1 at 7). On January 25, 2023, inspectors

with the United States Postal Inspection Service ("USPIS") in Phoenix, Arizona identified the Priority Mail Express package as suspicious during a routine screening. (*Id.* at 3–4). Inspectors noticed that the package was heavier than a typical mailing and had a handwritten label with no business account number, indicating the sender likely paid cash. (*Id.* at 4). Inspectors recognized these characteristics as indicators that the package might be associated with illegal activity. (*Id.*). The same day, a canine inspector gave a positive alert to the parcel. (*Id.* at 7).

USPIS then investigated the two addresses on the parcel. (*Id.* at 4). The package was sent by "Northend Empire LLC" in Champaign, Illinois to "Reggie's Barbecue" in Phoenix, Arizona. (*Id.*). The Northend Empire LLC address was a P.O. Box registered to Natris Morris. (*Id.*). Business records indicated that Northend Empire LLC was an Illinois entity registered to Morris and Dorian Parsons. (*Id.* at 4, 6). Reggie's Barbecue was registered to Reginald and Kathy McKinley. (*Id.* at 5). Further investigation revealed that Reginald, Dorian, and Morris had prior Illinois convictions for narcotics-related offenses. (*Id.*).

On January 26, 2023, USPIS inspectors obtained and executed a search warrant on the Priority Express Mail package. (*Id.* at 7). Inside, they discovered $44,980 in United States currency in a plastic bag. (*Id.*). The plastic bag was concealed in a maroon and gold gourmet popcorn container, along with popcorn, towels, and bubble wrap. (*Id.* at 7, 9). The cash was rubber-banded in eight bundles and consisted mostly of $20 bills. (*Id.* at 7). Inspectors found no notes, receipts, or instructions in the parcel. (*Id.* at 8).

On January 27, 2023, a customer identifying himself as Nate Morris called USPS to inquire about the Priority Express Mail package. (*Id.* at 9). Morris provided his contact information but refused to disclose the contents of the package to the USPS representative. (*Id.*). On February 1, 2023, Morris called USPS again to ask about the package. (*Id.*). When the representative inquired about the package's contents, Morris stated that it contained legal papers, ashes, and an urn, which he described as a "maroon and gold tin can." (*Id.*). He confirmed that the package was intended for Reggie's Barbecue. (*Id.*).

On April 22, 2023, Nate Morris submitted a claim to USPIS for the defendant property. (*Id.* at 11). Morris stated in his claim form that "Northend Empire LLC is a professional sports management agency and sports event organizer." (*Id.*). Morris claimed that Reggie's Barbecue was one of Northend Empire LLC's vendors and that the currency was a deposit to purchase a food truck for the February 2023 Superbowl. (*Id.* at 11–12). Morris also claimed that Reggie's "insisted that the mode of payment to be cash only." (*Id.* at 12). Morris stated that the seized property was "revenue generated by the applicant through following sources: cash from bank account, cash from prior events and a cash investment by family member." (*Id.*).

On May 9, 2023, USPIS sent a letter to Morris and his attorney, requesting that Morris provide a written statement regarding his claim under penalty of perjury. (*Id.* at 13). In the response letter submitted by his attorney, Morris stated that he mailed the money inside the popcorn can as a "gesture to celebrate the venture." (*Id.*). He also provided bank statements for an account held by Northend Empire LLC. (*Id.* at 14). The statements showed that, from October 2022 to approximately January 25, 2023, the average balance in the account was under $1,000. (*Id.*). On January 26, 2023, the day the package was seized by USPIS, the account received a credit in the amount of $38,400 from an Illinois LLC. (*Id.* at 15). In March 2023, the account sent two different Zelle payments to Reggie's Barbecue, totaling $10,000. (*Id.*).

Plaintiff filed this forfeiture action on July 21, 2023. (*Id.* at 17). On July 27, 2023, Plaintiff sent notice of the forfeiture action to Nate Morris and his attorney via certified mail. (Doc. 6-1 at 2). Plaintiff also posted notice "on an official government internet site (www.forfeiture.gov) for at least 30 consecutive days, beginning on July 25, 2023." (Doc. 8 at 2; Doc 6-1 at 12). No response to the complaint was filed. (Doc. 6 at 1). On October 13, 2023, Plaintiff requested that the Court enter default in its favor, and the Clerk of Court did so on October 16, 2023. (*Id.*; Doc. 7).

Plaintiff now moves for default judgment under Fed. R. Civ. P. 55(b). (Doc. 8). No response has been filed.

## II. FORFEITURE PROCEDURES

Forfeiture actions are governed by Rule G of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). *See United States v. $43,258.00 in United States Currency*, No. CV-22-01388-PHX-DWL, 2023 WL 2540244, at *3 (D. Ariz. Mar. 16, 2023). Under Rule G(2), a complaint in a forfeiture action must:

(a) be verified;
(b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue;
(c) describe the property with reasonable particularity;
(d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;
(e) identify the statute under which the forfeiture action is brought; and
(f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

*Id.* The complaint here complies with the requirements of Rule G(2). (Doc. 1). Additionally, as required by Rule G(3), the defendant property was seized by a U.S. marshal pursuant to a warrant for arrest *in rem*. (Docs. 4 & 5).

Plaintiff has also complied with the notice requirements of Rule G(4). When the identity of a property owner is known, "notice must be sent by means reasonably calculated to reach the potential claimant." Rule G(4)(b)(iii)(A); *see also United States v. Real Prop.*, 135 F.3d 1312, 1315 (9th Cir. 1998) (reasoning that, when a claimant is known, the Fifth Amendment requires the government to give notice that "one desirous of actually informing the absentee might reasonably adopt to accomplish it"). Here, Plaintiff sent direct notice of the forfeiture action to Morris and his attorney via certified mail on July 27, 2023. (Doc. 8 at 2). "Courts have held that certified mail may be a means of providing notice reasonably calculated to reach known potential claimants." *$43,258.00 in United States Currency*, 2023 WL 2540244, at *4; *see also United States v. Approximately $72,000 in U.S. Currency*, No. C-08-1305-JCS, 2009 WL 506866, at *7 (N.D. Cal. Feb. 27, 2009) (noting that certified mail is a means of service permitted under Fed. R. Civ. P. 5). In addition to notifying Morris directly, Plaintiff posted notice on an official

government internet site for at least 30 consecutive days. (Doc. 8 at 2). Publication notice of this kind complies with Rule G(4)(a). *See Real Prop.*, 135 F.3d at 1315 (suggesting that, when claimants are unknown, the Supplemental Rules require only publication notice of forfeiture proceedings). Plaintiff has therefore satisfied the notice requirements for known and unknown claimants under Rule G(4).

No appearance, claim, answer, or motion was filed by any party contesting the forfeiture, as required by Rule G(5) and 18 U.S.C. § 983(a)(4). *See $43,258.00 in United States Currency*, 2023 WL 2540244, at *4 (finding claimant had no standing when claimant failed to comply with Rule G(5)'s procedural requirements for opposing the forfeiture). Accordingly, Plaintiff has satisfied the procedural requirements for bringing this forfeiture action *in rem*.

## III. DEFAULT JUDGMENT

Once default has been properly entered pursuant to Fed. R. Civ. P. 55(a), this Court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam); *see also Bankers Ins. Co. v. Old W. Bonding Co.*, No. CV-11-1804-PHX-DGC, 2012 WL 2912912, at *2 (D. Ariz. July 16, 2012) (explaining that, "when default has been properly entered pursuant to Rule 55(a), the Court has discretion to grant default judgment pursuant to Rule 55(b)"). In considering whether to enter default judgment, a court may consider the following factors, known as the *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When considering these factors, the Court "takes the well-pleaded factual allegations in the complaint as true." *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal quotation marks omitted)

1  (quoting *Cripps v. Life Ins. Co. N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992)). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267. The Court discusses the *Eitel* factors below, placing special emphasis on the second, third, and fourth factors.

### A. The Second and Third *Eitel* Factors: The Sufficiency of the Complaint and The Merits of Plaintiff's Substantive Claim

The second and third *Eitel* factors "are often analyzed together and require courts to consider whether a plaintiff has state[d] a claim on which [it] may recover." *Ariz. Board of Regents v. Doe*, 555 F. Supp. 3d 805, 816 (D. Ariz. 2021) (internal quotation marks omitted) (quoting *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019)). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *See $43,258.00 in United States Currency*, 2023 WL 2540244, at *4 (quoting *Vietnam Reform Party*, 416 F. Supp. 3d at 962).

Here, Plaintiff brings a forfeiture action under 21 U.S.C. § 881(a)(6). "Before a forfeiture will lie under § 881, the Government must first establish probable cause to believe that the seized property was connected to an illegal drug transaction." *United States v. $22,474 in U.S. Currency*, 55 F. Supp. 2d 1007, 1011 (D. Ariz. 1999); *see also* 18 U.S.C. § 983(c)(3) (explaining that, in a forfeiture action related to a criminal offense, the government must establish a "substantial connection between the property and the offense"). To establish probable cause, Plaintiff must show it "had reasonable grounds to believe a connection existed between the property and drug activities, supported by more than mere suspicion but less than prima facie proof." *United States v. Currency, U.S. $42,500.00*, 283 F.3d 977, 980 (9th Cir. 2002). If Plaintiff establishes probable cause, the burden then shifts to a claimant to prove, "by a preponderance of the evidence, that the money was not connected with illegal drug activity." *Id.*

Taken as true, the factual allegations in the complaint establish that Plaintiff had probable cause to believe the defendant property was connected to illegal narcotics activity. First, the concealment of the defendant property in unusual packaging suggests that it was

related to an illegal drug transaction. The currency was bundled with rubber bands, placed in a plastic bag, and concealed inside of a popcorn tin along with popcorn, towels, and bubble wrap. (Doc. 1 at 7). Concealment of currency in unusual packaging is probative evidence of illegal activity. *See United States v. $105,180 in U.S. Currency*, No. CV-12-08122-PCT-DGC, 2013 WL 2153326, at *8 (D. Ariz. May 17, 2013) (finding that currency bundled in rubber bands, placed in plastic bags, and concealed underneath clothing in luggage was "not consistent with legitimate business activity").

In addition to its unusual contents, the Priority Express Mail package itself bore indicia that it was related to illegal activity. For example, the package was heavier than usual and had a handwritten label without a business account number, suggesting that the sender paid cash. *See United States v. Approximately $7,800.00 in U.S. Currency*, No. 1:19-CV-00427-NONE-EPG, 2020 WL 773399, at *1 (E.D. Cal. Feb. 18, 2020) (ordering default judgment in forfeiture action where inspectors determined that a handwritten package label was probative of illegal narcotics activity). A canine inspector also gave a positive alert to the parcel, indicating that narcotics odors were present. *See United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1043 (9th Cir. 1994) (finding that a positive canine alert supports a connection to narcotics activity only when "combined with other credible evidence clearly connecting the money to drugs").

The quantity and denomination of the currency also suggest a connection to illegal activity. Possession of a large amount of cash is "strong evidence that the money was furnished or intended to be furnished in return for drugs." *$105,180 in U.S. Currency*, 2013 WL 2153326, at *8 (quoting *United States v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir. 1984)). While possession alone is insufficient to establish a substantial connection to illegal drug activity, a "common sense reality of everyday life is that legitimate businesses do not transport large quantities of cash rubber-banded into bundles and stuffed into packages . . . ." *United States v. $14,000 in U.S. Currency*, No. CV-12-01546-PHX-JAT, 2014 WL 1230497, at *4 (D. Ariz. Mar. 25, 2014) (quoting *United States v. $242,484.00 of U.S. Currency*, 389 F.3d 1149, 1161 (11th Cir. 2004)).

Moreover, the currency consisted mostly of $20 bills, which "furthers the inference that the money was drug-related." *United States v. $27,800 in United States Currency*, No. 17-CV-00533-AJB-KSC, 2017 WL 6345394, at *4 (S.D. Cal. Dec. 8, 2017); *see also $14,000 in U.S. Currency*, 2014 WL 1230497, at *4 (noting that legitimate businesses seeking to transport currency likely "would convert smaller denomination bills into larger ones"). "The large amounts of currency and small denominations of some of the bills in this action are strong evidence supporting a finding of probable cause." *United States v. Approximately $17,872 in U.S. Currency*, No. C-08-03346-WHA, 2009 WL 2990496, at *3 (N.D. Cal. Sept. 11, 2009).

The concealment, packaging, quantity, and denomination of the currency suggest that Plaintiff had probable cause to believe a substantial connection existed between the defendant property and illegal narcotics activity. Because Plaintiff has established probable cause, the burden would shift to Morris to "prove, by a preponderance of the evidence, that the money was not connected with illegal drug activity." *Currency, U.S. $42,500.00*, 283 F.3d at 980. Morris has not filed any answer or motion in this case and therefore has not made that showing.

Even if Morris had filed a response, the facts alleged in the complaint do not suggest that the defendant property was the product of legal activity. In his written statement to USPIS, Morris gave a vague explanation about the source of the currency. He claimed that the currency came from a family member, the business's "prior events," and a bank account. (Doc. 1 at 12). However, bank statements showed that the average balance in the Northend Empire LLC bank account was typically less than $1,000 prior to January 25, 2023. (*Id.* at 14). Additionally, a financial investigation uncovered that the Northend Empire LLC bank account sent Zelle payments to Reggie's Barbecue totaling $10,000. (*Id.* at 15). This undermines Morris's claim that Reggie's Barbecue insisted on a cash payment. (*Id.* at 12). Morris also made several inconsistent statements about the contents of the package. The first time Morris called USPS, he refused to disclose the contents of the package to the USPS representative. (*Id.* at 9). The second time he called USPS, he claimed

that the package contained legal papers, ashes, and a "maroon and gold" urn. (*Id.*). In his written response to USPIS investigators, Morris stated that he mailed the money inside the popcorn can as a "gesture to celebrate the venture." (*Id.* at 13). These inconsistent statements suggest that Morris intended to conceal the contents of the package and then, when the package was opened, to provide a post hoc explanation for the unusual contents.

Based on the facts alleged, Plaintiff had probable cause to believe that the seized property was connected to an illegal drug transaction under 21 U.S.C. § 881(a)(6). The second and third *Eitel* factors therefore favor entry of default judgment.

### B. The Fourth *Eitel* Factor: Sum at Stake

"Under the fourth factor, the Court considers the amount of money at stake in relation to the seriousness of the conduct at issue in the litigation." *$43,258.00 in United States Currency*, 2023 WL 2540244, at *5. Here, $44,980.00 of cash is at stake. Another judge in this District recently held that a similar sum of money weighed against granting default judgment. *Id.* (finding that $43,258.00 was "a substantial amount of money"). That court nevertheless found default judgment appropriate after balancing the *Eitel* factors. *Id.* at *6. Likewise, other judges in this Circuit have granted default judgment when a greater sum of money was at stake than the amount here. *See United States v. $73,982.00 in U.S. Currency*, No. 3:12-CV-00363-LRH-WGC, 2013 WL 6844802, at *2 (D. Nev. Dec. 19, 2013) (finding that the sum of $73,982.00 was "not so great as to preclude default judgment"); *see also United States v. Approximately $72,000 in U.S. Currency*, No. C-08-1305-JCS, 2009 WL 506866, at *4 (N.D. Cal. Feb. 27, 2009) ("Nor is the sum of money at stake in the action so large as to warrant a denial of the motion."). The Court concludes that the sum of money here, while not insignificant, does not preclude default judgment.

### C. The Remaining *Eitel* Factors: Prejudice, Dispute of Material Facts, Excusable Neglect, and Decisions on the Merits

In cases like this one, where the motion for default judgment is uncontested, "the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020);

*accord $43,258.00 in United States Currency*, 2023 WL 2540244, at *4.

The first factor, possibility of prejudice, weighs in favor of default judgment. A possibility of prejudice exists when failure to enter default judgment would deny a plaintiff judicial resolution of the claims presented or leaves a plaintiff "without other recourse for recovery." *Pritikin ICR, LLC v. Apricus Health MSO, LLC*, No. CV-23-00592-PHX-JZB, 2024 WL 1181137, at *3 (D. Ariz. Feb. 29, 2024) (quoting *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)). Here, Plaintiff would be prejudiced, because Plaintiff "would be required to litigate this action even though no potential claimants have appeared to contest this forfeiture." *$27,800 in United States Currency*, 2017 WL 6345394, at *4; *see also United States v. Approximately $28,000 in U.S. Currency*, Case No. 09-5377-SC, 2010 WL 1340110, at *4 (N.D. Cal. Apr. 5, 2010) (noting that prejudice exists where the government would have to expend further resources in an action with no opposing party).

For similar reasons, the fifth and sixth factors do not preclude default judgment. "Because no potential claimant has participated, there is no dispute over material facts and no indication that default is due to excusable neglect." *$43,258.00 in United States Currency*, 2023 WL 2540244, at *4. Little possibility exists that default resulted from excusable neglect because Morris has previously communicated with USPIS, had retained an attorney, and was duly served notice of this forfeiture action. *See PepsiCo.*, 238 F. Supp. 2d at 1177 (reasoning that a defendant's "early participation in the matter" suggested that excusable neglect was unlikely).

Lastly, the seventh factor does not preclude default judgment. Cases "should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472. Nonetheless, "the mere existence of Rule 55(b) 'indicates that this preference, standing alone, is not dispositive.'" *Bankers Ins. Co.*, 2012 WL 2912912, at *3 (quoting *PepsiCo.*, 238 F. Supp. 2d at 1177). A decision on the merits is "impractical, if not impossible," when no response to the complaint is filed. *PepsiCo.*, 238 F. Supp. 2d at 1177. Because no response to the complaint has been filed here, this factor does not preclude entering default

judgment.

On balance, the *Eitel* factors weigh in favor of default judgment. The Court therefore grants Plaintiff's motion.

## IV. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 8) is **GRANTED**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the interest of Nate Morris DBA Northend Empire LLC, and all others in defendant $44,980.00 in United States currency is forfeited to the United States of America in accordance with 21 U.S.C. § 881 and 18 U.S.C. § 981(a)(1)(A) and (C).

**IT IS FURTHER ORDERED** that the defendant property be disposed of according to law.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment accordingly.

Dated this 12th day of April, 2024.

James A. Teilborg
Senior United States District Judge